No. 14,362.

ESTATE OF LOWELL.

LOWELL, EXECUTRIX v. ARNETT.
(90 P. [2d] 957)

Decided May 8, 1939.   Rehearing denied May 29, 1939.

344

Miss MARY F. LATHROP, Miss GUNHILD I. NESS, for plaintiff in error.

Mr. WILLIAM A. BRYANS, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE HILLIARD delivered the opinion of the court.

THIS case involves the matter of a claim against the estate of a decedent allowed in the sum of $4,503.59, as of the fifth class.

Claimant, formerly the wife of the decedent, was granted a divorce April 8, 1913, in the Denver district court. In the decretal findings it was stated that the parties had "one adopted minor child, Martha Phillips Lowell, aged eight years; and that the plaintiff [claimant here] is a suitable person to have the custody of said minor child," and custody was awarded accordingly. Defendant there was ordered to "pay for the education of said child, a sum of not less than $400 per annum, and shall support and provide for said child, in a manner suitable to her station in life, for and during and until

she shall have arrived at her majority.'' Computing her claim at the rate of $400 per year, the amount fixed in the decree, for the period between the time of rendering the decree and the child's majority, claimant demanded $5,600, plus interest, and less conceded payments aggregating $960. The trial court found that a sum slightly in excess of that credited by claimant had been paid, and that there was a period when the decedent provided for the child elsewhere, which entitled the estate to a further credit. Predicated so, the court found there was due claimant the sum already stated, and so adjudged. The amount included simple interest at the statutory rate. Clearly, as we perceive, the evidence justified the award as to sum and we are not disposed to disagree with the conclusion of the trial court to the effect that the circumstances warranted allowance of interest. See *Kaifer v. Kaifer,* 286 Ill. App. 433, 3 N. E. (2d) 886.

At the trial counsel for the estate urged the following defenses: (1) That the child in question was not adopted, hence decedent was not obligated to provide for her; (2) that decedent did provide for her, in that "he not only sent large sums of money to the claimant, but he also sent sums of money to the child herself during her minority and afterward"; (3) that the child was not in the custody of the claimant, but in other custody, part of the time with an Aid Society in New York, and at other times with claimant's two sisters, and that "during all of that time the decedent supported the child."

█ 1. We cannot think that doubt obtains as to the adoption of the child. In the district court divorce decree, whereby custody of the child was awarded and provision for its support ordered at the hands of decedent, a formal finding as to the fact of adoption was made, as we have seen. Considering that decedent was not the child's natural father, and the endearing references to her in his many letters, postcards and telegrams through the intervening years, clearly these are consistent with no other view than that he regarded the child as his

daughter and himself as her father—a relationship necessarily having genesis in the claimed adoption.

We do not overlook the fact, stressed by counsel for the estate, that in the divorce case the allegation of plaintiff to the effect that the child, important to our review, was adopted by the parties to that suit, possibly was denied. That there was denial is based upon a line in red ink drawn through words in the answer prepared by decedent's counsel there admitting the adoption. How, or when, or by whom, the red ink line was placed on the pleading rests in mystery; but according it the dignity of a denial, it only served to create an issue, and that issue, in a decree approved by decedent's counsel in the divorce case, was resolved in favor of the adoption alleged in the complaint. We regard the finding in the divorce decree as conclusive here. It was not properly subject to collateral attack, as was attempted below. *Diebold v. Diebold,* 79 Colo. 7, 243 Pac. 630.

The estate sought to suppress certain depositions, on the ground, as stated, that they "were not certified to this court in a sealed envelope, directed to the clerk of this court, and forwarded to him by mail or other usual channel of conveyance, in accordance with the mandatory provision of the Code of Civil Procedure and of section 386 thereof." It seems that instead of mailing the depositions to the clerk, the officer before whom they were taken gave them into the custory of counsel for claimant who brought them to Denver, and that a messenger carried them from the attorney's office to the court clerk. Only as to the method of transmission was there any showing. It does not appear, nor was it charged, that the depositions as taken were subjected to change or alteration in any particular. It was not established that they were not "certified in a sealed envelope." There was no claim that the method of transmission prejudiced the estate and no prejudice appeared. The gist of the claim is that the depositions were not returned by mail. It were better practice, of course, to employ the

mail in such matters; but the statute does not limit transportation to this method. "Other usual channel of conveyance" may be employed. We are disposed to regard the means used here as of doubtful propriety, and counsel should have avoided it. At the same time, all the circumstances considered—no fraud or other harm attending in fact—it would not comport with justice to order reversal, no other purpose resulting than to require the parties to retake the depositions. "Exception to a deposition which is made on strictly technical grounds should not be sustained in the absence of any showing of prejudice." *O'Leary v. Schoenfeld,* 30 N. D. 374, 152 N. W. 679.

We are not disposed to regard as sound the challenge based on laches. It was not suggested at trial, where, if objection were made in that behalf, the opposing party would have opportunity to offer explanatory evidence. Only on very clear showing that injustice obtains would a court of review be justified in entertaining the point in the first instance. We do not think the record justifies that conclusion here. The estate places reliance on *Price v. Price,* 80 Colo. 158, 249 Pac. 648. But there, as the record revealed, the plea of laches was formally interposed in the trial court. Also, and the distinction is recognized by the authorities, in the Price case the proceeding was in contempt by which the wife, after the lapse of more than fifteen years, sought to enforce her rights against the husband. We concluded that the plea of laches, timely and appropriately interposed in the trial tribunal, should operate to release the husband from the enforcement of so drastic a remedy.

We have examined as to other points suggested, but think them to be without merit.

Let the judgment be affirmed.

Mr. Justice Young and Mr. Justice Knous concur.